UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEFANO MESSINA and
MARIA MESSINA,

       Plaintiffs,                               Civil Action No.
                                                       05-CV-73409-DT

vs.

                                                             HON. BERNARD A. FRIEDMAN

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

       Defendant.
_____/

**OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT and
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

        This matter is presently before the court on cross motions for summary judgment. Plaintiffs seek review of a decision of defendant U.S. Citizenship and Immigration Services. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide these motions without oral argument.

        The facts of the case are essentially undisputed. The plaintiffs are Stefano Messina and his adopted daughter, Maria Messina.[1] Stefano and his wife, Caterina, were married in Italy in 1964 and came to the United States shortly thereafter. Stefano became a naturalized U.S. citizen in 1971 (Tr. 1).

        Maria Messina (nee Maria Rosanna DiDia) was born in Italy on July 5, 1983 (Tr. 1). Her mother was Laura DiDia (Tr. 15). When Maria was born, Laura had been separated from her husband for ten months and Maria's father was someone other than Laura's husband (Tr. 15). On

---

[1] Throughout this opinion, the court refers to plaintiffs and other individuals by their first names simply for ease of identification.

July 14, 1983, Laura petitioned a local judge to issue a passport to Maria to enable her to migrate to the United States with Stefano and Caterina, who had traveled from the United States to Italy for this purpose (Tr. 15). In this petition, Laura stated that she was giving "permanent custody" to Stefano and Caterina who "have accepted the custody." On July 22, 1983, the judge issued the passport, finding "that the expatriation of the minor in the custody of Messrs. Messina is for her best interest" (Tr. 15). On August 2, 1983, Stefano and Caterina brought Maria to the United States on a visitor's visa (Tr. 28). On June 26, 2002, the Family Division of Macomb Circuit Court issued an Order of Adoption indicating that Stefano and Caterina were the adoptive parents of Maria (Tr. 32). On November 10, 2004, that court issued an Amended Order of Adoption Nunc Pro Tunc ordering that "the Order of Adoption dated June 26, 2002 is amended to indicate that the adoption was entered Nunc Pro Tunc, retroactive to the minor's date of birth July 5, 1983."

In September 2002, Stefano filed an I-130 "Petition for Alien Relative," requesting that the Immigration and Naturalization Service (INS) adjust Maria's status to allow her to remain in the country permanently (Tr. 1-2). On this petition, Stefano indicated that Maria was his child by adoption (Tr. 1). In August 2004, the successor agency to INS (Department of Homeland Security, U.S. Citizenship and Immigration Services) denied the petition on the grounds that Maria was not Stefano's "child" under the Immigration and Nationality Act because she was not adopted before her sixteenth birthday (Tr. 9-10). The decision cited § 101(b)(1) of the act, which defines "child" as "an unmarried person under twenty-one years of age who is . . . (E) a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years." Defendant's decision also cited 8 C.F.R. § 204.2(d)(2)(vii)(C), which states that "the child must have been under 16 years of age when the

2

adoption is finalized."

Stefano twice requested reconsideration, arguing that he adopted Maria in Italy shortly after her birth and that the nunc pro tunc order of adoption related back to her date of birth (Tr. 12-32; 38-67). These motions were denied for the same reason stated initially, namely, that Maria was over the age of sixteen when she was adopted (Tr. 36-37, 135-37). The agency also specifically stated that "retroactive or nunc pro tunc adoptions are not acceptable for immigration purposes" (Tr. 136).

**Cross Motions for Summary Judgment**

Both parties seek summary judgment. The parties agree that the agency's decision may be reversed only if the court finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and that review is limited to the information contained in the administrative record.

The parties agree that the critical issue in this case is whether Maria was, or was not, adopted by Stefano and Caterina before her sixteenth birthday. The Immigration and Nationality Act permits a United States citizen to file an immigrant petition on behalf of his/her child, *see* 8 U.S.C. § 1154(a)(1)(A)(i), and the statutory definition of "child" includes "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years." 8 U.S.C. § 1101(b)(1)(E)(i). Defendant's regulation requires that "the adoption took place before the beneficiary's sixteenth birthday" and that "[a] copy of the adoption decree, issued by the civil authorities, must accompany the petition." 8 C.F.R. § 204.2(d)(2)(vii).

Having reviewed the record and the parties' briefs, the court is persuaded that defendant's decision in this matter, which concluded that Maria's adoption did not occur until after her sixteenth birthday, is arbitrary, capricious, and contrary to law. The record clearly indicates that Stefano and Caterina adopted Maria in Italy shortly after Maria's birth. Were there any doubt about the effectiveness of the adoption in Italy, the record clearly indicates that Maria was adopted again in Michigan and that the Michigan order of adoption was made nunc pro tunc to the date of Maria's birth. Both adoptions satisfy the statute as well as the regulation.[2]

Defendant's decision is arbitrary, capricious, and contrary to law for several reasons. First, the decision fails to address plaintiffs' contention that they adopted Maria in Italy and it entirely ignores the record evidence supportive of this contention. As the court of appeals noted in *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001), "[a]t a minimum, [the arbitrary, capricious, abuse of discretion] standard requires the agency to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (Citations omitted.) Further, the court reviews the *agency decision*, not "*post hoc* rationalization by counsel." *Hooker Chems. & Plastics Corp. v. Train*, 537 F.2d 620, 636 (2nd Cir. 1976). In addition, an administrative agency may not "ignore evidence placed before it by interested parties." *Consumers Union of United States, Inc. v. Consumer Prod. Safety Comm'n*, 491 F.2d 810, 812 (2nd Cir. 1974).

---

[2]The parties have not briefed the question of whether defendant's regulation is entitled to deference. Generally, an agency's interpretation of a statute it is charged with implementing is entitled to deference provided that the interpretation, as expressed in the implementing regulation in question, is consistent with the statute and does not "exceed[] the bounds of the permissible." *Barnhart v. Walton*, 535 U.S. 212, 218 (2002), *citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). For present purposes, the court shall assume without deciding that defendant's regulation, 8 C.F.R. § 204.2(d)(2)(vii), is valid.

Defendant's initial decision (Tr. 9-10) fails to even mention plaintiffs' contention that Stefano and Caterina adopted Maria in Italy. The decision on plaintiffs' first motion for reconsideration does note that "petitioner . . . seeks consideration of the fact that the petitioner believed the adoption of the beneficiary was finalized in Italy when the beneficiary was a baby" (Tr. 36), but neither discusses the record evidence supporting this claim nor makes a finding as to whether an adoption occurred in Italy. The decision on plaintiffs' second motion for reconsideration focuses solely on the effect of the Michigan court's nunc pro tunc order of adoption and, once again, says nothing regarding whether an adoption occurred in Italy (Tr. 135-37). Defendant's failure to address plaintiffs' contention that Maria was adopted in Italy, or to acknowledge the evidence in support of this contention, or to make a finding one way or another on this important issue, by itself makes defendant's decision in this matter arbitrary and capricious.[3]

The infirmity of defendant's decision is the more egregious because the record contains significant evidence showing that Stefano and Caterina in fact did adopt Maria in Italy in July 1983, days after Maria was born. This evidence includes an Italian court document dated July 22, 1983, the translation of which states:

> Hon. Judge in the Pretura in Partinico
>
> The undersigned DiDia Laura . . . married to Mineo Leonardo . . .
> living apart from him about ten months, giving her own approval, as

---

[3]As noted above, the court's attention in the instant proceeding focuses on defendant's decision as articulated in the record (Tr. 9-10, 36-37, 135-37). New arguments and analysis by defendant's counsel, presented for the first time in litigation in an effort to prop up the agency's decision, are not part of what the court reviews under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2), authorizing review of "agency action, findings, and conclusions," not *post hoc* arguments or analysis. Therefore, the court shall not address defense counsel's arguments, none of which were mentioned in defendant's written decisions, as to why the record evidence fails to establish that an adoption occurred in Italy.

5

> per affidavit given on the same date with signature authenticated by Notary . . . that her own natural daughter Di Dia Rosanna, born in Palermo on July 5, 1983, with a person other than her own husband, be given in permanent custody to Messina Stefano . . . and Bultaggio Caterina . . . (husband and wife), residing in the United States of America, which have accepted the custody of the forementioned girl, which will be migrating with them in the United States of America, and having also authorized the same to migrate to the U.S.A. of the forementioned girl, with the present ask your Honor to permit the issuance of the necessary permit so the aforementioned girl could be admitted in the United States of America together with her custodians Messina Stefano and Vultaggio Caterina so that the appropriate authority issue the passport.
> Best wishes.
> Partinico, July 14, 1983
> Di Dia Laura
>
> The Pretor G.T.
> After reading the preceding petition and additional information, believe that the expatriation of the minor in the custody of Messrs. Messina is for her best interest,
> P.G.T.
> The issue of the passport is hereby authorized as requested on the above petition.
> Partinico 7-22-1983

(Tr. 15.) Although not entitled an "adoption decree," as defendant's regulation requires, this document has the same effect as such a decree. Clearly, by signing this petition Maria's natural mother intended not only to give "permanent custody" to Stefano and Caterina, but to permit the child to "migrate" with them to the United States. Moreover, the judge not only issued the requested passport but also specifically found that the child's "expatriation" to the United States was in her best interest. This document bears all the indicia of an adoption decree.

Another document in the record, which defendant also disregarded, is a certificate of baptism stating that Maria was "born on 7-5-1983 to Stefano Messina and Vultaggio Caterina" and baptized on July 30, 1983 (Tr. 46). This indicates that local church officials recognized Stefano

and Caterina as Maria's parents.

Further evidence of the relationship between Stefano, Caterina and Maria, which defendant also disregarded, is the transcript of the June 26, 2002, confirmation hearing before the Macomb County Circuit Court (Tr. 75-82), in which Stefano and Caterina both testified that they had raised Maria since the day she was born (Tr. 79).

This evidence clearly establishes that Stefano and Caterina adopted Maria in Italy. The word "adopt" is not defined in the Immigration and Nationality Act or in defendant's regulations, and it is therefore to be given its common and ordinary meaning. The American Heritage Dictionary defines the term as meaning "[t]o take into one's family through legal means and raise as one's own child." Webster's New World Dictionary defines the term as meaning "to choose and bring into a certain relationship; specif., to take into one's own family by legal process and raise as one's own child." The Oxford English Dictionary defines the term as meaning "to take (any one) voluntarily into any relationship (as heir, son, father, friend, citizen, etc.) which he did not previously occupy." Certainly under any of these definitions, Maria was adopted in Italy. The "legal means" or "legal process" occurred when the Italian judge granted the passport petition inasmuch as he acknowledged that the natural mother was voluntarily giving "permanent custody" to Stefano and Caterina and permitting Maria to "migrate" with them to the United States and found that this arrangement was in Maria's best interest.

As noted above, defendant's decision did not discuss the Italian adoption, or make any findings regarding that adoption, and for this reason alone is arbitrary and capricious under *Tourus Records, Hooker Chemicals*, and *Consumers Union*, *supra.* Defendant's decision did acknowledge that Maria was adopted in Michigan, but concluded that the adoption took place after

7

her sixteenth birthday and that the adoption would not be given "nunc pro tunc" effect, despite the clear wording of the amended order of adoption. The court finds this aspect of defendant's decision to be arbitrary, capricious and contrary to law, as well.

        The Amended Order of Adoption Nunc Pro Tunc, dated November 10, 2004, states:

> THE COURT being fully advised in the premises, and upon a reading of Petitioners Ex-Parte Petition to Amend Order of Adoption Nunc Pro Tunc orders as follows:
>
> IT IS HEREBY ORDERED that the Order of Adoption dated June 26, 2002 is amended to indicate that the adoption was entered <u>Nunc Pro Tunc</u>, retroactive to the minor's date of birth July 5, 1983.

In its decision, defendant stated that "retroactive or nunc pro tunc adoptions are not acceptable for immigration purposes" (Tr. 136). Defendant cited two decisions of the Board of Immigration Appeals for the propositions that "an adoption for immigration purposes occurs on the date the final adoption decree is issued" and that "retroactive adoptions are not recognized for immigration purposes despite any retroactive effect given the adoption by the issuing court" (Tr. 136).[4]

        Defendant's refusal to give effect to the state court order raises significant federalism and comity concerns. Defendant does not claim that the order is invalid, but rather that the order is not "acceptable" or "recognized" because it makes the adoption retroactive. Defendant cites no authority, and this court is aware of none, supporting the proposition that a federal agency may disregard a valid state court order – particularly where, as in the present case, the agency's decision is not supported by statutory authority. As noted above, the statute defines "child" as including "a

---

[4]In his summary judgment motion, defense counsel makes additional arguments as to why the amended order of adoption should not be given "nunc pro tunc" effect. These additional arguments were not articulated by defendant *in its decision* and are precisely the sort of *post hoc* justifications which the court does not consider in an action brought under the Administrative Procedures Act.

8

child adopted while under the age of sixteen years" 8 U.S.C. § 1101(b)(1)(E)(I), and does not rule out nunc pro tunc or retroactive adoptions. Even defendant's regulation, which requires that "the adoption took place before the beneficiary's sixteenth birthday" and that "[a] copy of the adoption decree, issued by the civil authorities, must accompany the petition," 8 C.F.R. § 204.2(d)(2)(vii), is silent on the issue of nunc pro tunc or retroactive adoptions. In short, defendant's decision that "retroactive or nunc pro tunc adoptions are not acceptable for immigration purposes" is not authorized either by the statute or defendant's own regulation interpreting the statute.

The only authority cited in defendant's decision, which speaks directly to the nunc pro tunc issue, is neither statute, regulation, nor court opinion, but a single decision of the Board of Immigration Appeals (BIA).[5] While decisions of the BIA are binding on officers and employees of the Department of Homeland Security, that body is nothing more than an administrative court created by the Department of Justice principally to review decisions of immigration judges. *See* 8 C.F.R. § 1003.1(b), (g). And while the BIA may interpret the Immigration and Nationality Act and implementing regulations, it has no law- or rule-making authority.[6] At most, the BIA may comment on the meaning of immigration regulations, but it may not create or amend the regulations.

---

[5]Defendant also cited *Matter of Mendoza*, Interim Decision No. 2869, 18 I&N Dec. 66 (BIA, June 11, 1981), for the proposition that "an adoption for immigration purposes occurs on the date the final adoption decree is issued" (Tr. 136). However, *Mendoza* did not involve a nunc pro tunc order of adoption and is therefore irrelevant for present purposes.

[6]In fact, it is only so-called "precedent decisions" of the BIA which are intended to "provide clear and uniform guidance to the Service, the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations." 8 C.F.R. § 1003.1(d). *See also* 8 C.F.R. § 1003.1(I) (regarding publication of precedent decisions). Both of the BIA decisions cited by defendant in the present case are so-called "interim decisions," not precedent decisions, and the amount of weight to which they are entitled, if any, is questionable.

Defendant's sole authority for its position that "retroactive or nunc pro tunc adoptions are not acceptable for immigration purposes" is *Matter of Cariaga*, Interim Decision No. 2507, 15 I&N Dec. 716 (BIA, July 22, 1976), a copy of which is attached to defendant's summary judgment motion as Exhibit 1. In *Cariaga*, the petitioner was an American citizen who had raised the beneficiary, a Mexican boy, since the boy's Mexican father brought him to the United States at the age of two. Shortly before the father died, when the boy was seven, he signed an affidavit consenting to the boy's adoption by the petitioner. When the boy was 19, petitioner obtained an order from an Iowa state court declaring the boy to be adopted by petitioner, retroactive to the date of the father's affidavit. The BIA chose not to recognize the retroactive effect of the adoption and denied the petition, reasoning that "[t]hrough the imposition of an age restriction on the creation of the adoptive relationship, Congress has attempted to distinguish between bona fide adoptions, in which a child has been made a part of a family unit, and spurious adoptions, effected in order to circumvent statutory restrictions. . . . The act of adoption must occur before the child attains the age of fourteen" *Id.* at 717.[7]

As indicated above, it is doubtful whether *Cariaga*, as an interim decision, is entitled to *any* weight. Clearly, however, the BIA erred in *Cariaga* by impermissibly substituting its own definition of child ("the act of adoption must occur before the child attains the age of fourteen") for that passed by Congress (child must be "adopted while under the age of fourteen"). Moreover *Cariaga* does not explain the legal authority by which the BIA, a creation of the Department of Justice, may disregard a court order. The BIA framed the issue in *Cariaga* as "whether the

---

[7]At the time *Cariaga* was decided, the statutory definition of "child" included a child "adopted while under the age of fourteen." *See id.* at 717.

10

retroactive effect which the Iowa Court has given the adoption should be considered by this Board." The BIA neglected to ask the more important question, namely, whether the BIA or any agency may disregard an order, issued by a court of competent jurisdiction, that is lawful on its face.

Defendant's decision in the instant matter likewise offers no legal authority, other than *Cariaga*, for disregarding the "amended order of adoption nunc pro tunc" issued by the Macomb County Circuit Court. If defendant doubted the validity or correctness of the "nunc pro tunc" designation, defendant should have sought relief from the court that issued the order. Court orders are presumed valid, and it is beyond the province of an administrative agency to declare an order "unacceptable" and act as though the order did not exist. Defendant may challenge the validity of a court order in the proper forum, but it may not on its own motion declare the order invalid. Defendant, like any government entity or individual, is duty bound to follow the orders of validly constituted courts and may not reserve the right to follow only those orders with which it agrees. Defendant's disregard for the rule of law cannot be tolerated in a civilized society, which requires all citizens, including the government itself, to respect and abide by the law.

Anther significant factor defendant's decision fails to mention, although it is apparent from the record, is that Stefano and Caterina could not obtain an order of adoption in Michigan until after Maria turned 18 because they were unable to locate Maria's natural parents, whose consent to the termination of their parental rights was required so long as Maria was under 18 (Tr. 96) by which time, under defendant's regulation as interpreted by *Cariaga*, she had missed the adoption deadline by two years. Allowing the adoption order retroactive effect is the only means of correcting the Catch 22. It is arbitrary and capricious to require compliance with a regulation when compliance is impossible.

11

**Conclusion**

For all of these reasons, the court concludes that defendant's decision in this matter is arbitrary, capricious, and contrary to law. It is also lacks common sense, or sense of fairness, or an appreciation for the fact that Stefano and Caterina have raised Maria since the day she was born and that they have lived together in the United States as a family since she was less than one month old. Defendant's proposal to deny Maria immigrant status and to deport her to the country of her birth is absurd in the extreme. Defendant has entirely disregarded the evidence that an adoption took place in Italy days after Maria was born, and defendant has no legal basis for disregarding the Michigan court's order of adoption that is retroactive to the date of her birth. Accordingly,

IT IS ORDERED that plaintiffs' motion for summary judgment is granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED pursuant to 5 U.S.C. § 706(1), which authorizes the court to "compel agency action unlawfully withheld," that defendant grant plaintiffs' I-130 "Petition for Alien Relative" forthwith.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: February 16, 2006
         Detroit, Michigan